and Habersham County. Mr. Ramsey. Your Honors, and may it please the Court, my name is Travis Rainey. I'm the Director of the Appellate Advocacy Clinic at the University of Alabama, and I would like to continue to express our gratitude on behalf of the clinical programs at the University for this Court's continued support of our clinical programs through appointments in cases like this one. One of the very best parts of my job is the opportunity that I have to introduce new advocates to this Court. And so today I'd like to introduce the Court to Ms. Madeline Martin and Mr. Jason Carlton, who will present argument on behalf of Ms. Robinson. Although they are dividing time, both are prepared to discuss the entire case. How are they dividing the issues? They're both prepared to discuss the entire case, Your Honor. So no division of the issues. They're both prepared to discuss everything. Well, I say this only for myself, but that's usually not a recipe for a well-planned argument. It's just very difficult. I appreciate their ability to deal with all aspects of the case, but it's really hard to know what to ask Appellate Advocate Number One and then what to ask Appellate Advocate Number Two if they're cross-sharing everything. Well, in this case, Your Honor, I would say that both are prepared. There's no need to worry about what to ask Appellate Advocate Number One or Advocate Number Two because they're both prepared to discuss everything. Can I make a suggestion? Yes, Judge. On the fly. So this will get them even further ready for their appellate careers later on. So how about one of them discussing McDonnell-Douglas and comparators, and one of them discussing the mosaic theory? Your Honor, it's interesting that you bring that up. I think on a somewhat informal basis, that is the division of plan. However, of course, the desire is to have flexibility to go wherever the court sees the most important issues. Okay. We'll proceed on that ground. So Ms. Martin, you're going first? Yes, Your Honor. Okay. So you choose which one of the two you want to take up, and then we'll take care of your colleague with the second issue. Okay? Okay. We're ready for you. Thank you, Judge. May it please the court. My name is Madeline Martin, and I, along with my co-counsel, Jason Carlton, represent Vanitha Robinson, the appellant in today's case. This court should reverse the district court decision for three reasons. First, the district court applied an unduly onerous standard treating Ms. Robinson's comparators as nearly identical, a standard this court did away with in Lewis. Second, the district court found factual inferences in favor of the county and Mr. Sutton to find that there was no evidence of pretext. And finally, the district court violated the precedent of this court by failing to analyze the alleged discrimination under the convincing mosaic framework. I will address the McDonnell-Douglas standard, and my co-counsel can address the convincing mosaic standard. When we look at the comparators, as this court has stated in Lewis, it is that they're to be similarly situated in all material aspects, and that if we look at the guidelines set forth in Lewis, they have the same supervisor, same employment policy, disciplinary history, as well as same conduct. And here, Ms. Robinson, throughout her pleadings, has pled that such individuals as Kane and Knupp can serve as valid comparators. These are individuals that are under the same supervision of Philip Sutton. They have the same employment history, or same employment policy, disciplinary history, as well as same conduct. However, Kane and Knupp were individuals that were given a novel title based on their work when Ms. Robinson was not given that same authority. But isn't a novel title different than a new position that needs to be created? Yes, Your Honor, and there are new positions that were created. For instance, Kane, he was the assistant of EMS. This was a new position with a novel title, so misspoke there. Right, but the commission created that position. Yes, Your Honor. However, if the commission, if they were to create, as well, Ms. Robinson's position that she was requesting, they are the board to request this new role, new title. However, Mr. I know, but the difficulty, the potential difficulty with Ms. Robinson's claim on that score is that there was no deputy position in the county. And so she's basically asking that the county create that new position for her. Doesn't that make a difference between her and her potential comparators? No, Your Honor. Simply, it is important to look at Ms. Robinson's role as HR director and why that matters. As HR director, she is the individual that, for her department, she would advocate for a new position or new title. She also approves any other reclassification or job change from any other department. So simply because she is requesting a new position does not defeat that Kane and Kanup can be used as valid comparators because they are directors that meet the guidelines set out in Lewis and they were given new positions, new titles based on the work that they had conducted within the county. However, I forget which is which. The one who had the two departments sort of merged, which one was that? That is Kane. Okay. Ms. Robinson didn't have anything like that happen in her department. So why doesn't that distinguish the two of them? Your Honor, that is correct that Ms. Robinson did not have two departments merged together. However, she still was undertaking 17 additional duties during her tenure as HR director. What additional duties that she had that weren't being done when she took the job? Your Honor, for instance, she was the first ever HR director to conduct financial audits. This role had previously been undertaken by the finance department for the county and she was the first ever HR director to undertake this. Financial audits within HR or across the commission's oversight? Across the county, Your Honor. And this role had previously been undertaken by the finance department and the R&R as well as the district court decision did not address this additional novel duty that Ms. Robinson undertook as HR director. Well, but the question is not whether she in fact had new duties. It's whether Mr. Sutton believed that she had duties that would justify this new position. Isn't that the question? Yes, Your Honor. And if we look at Mr. Sutton's beliefs and reasons as to why he stated she was not warranted for this promotion and new title is that it changes throughout. There's inconsistent and contradictory... Well, but that's a little bit different from the question that I'm asking you. What evidence is there that Mr. Sutton knew or maybe even should have known that the duties were substantially different, different enough to justify this new position? Your Honor, Mr. Sutton throughout the briefing and record acknowledges that there were 17 additional duties that Ms. Robinson undertook. He does state that some of them are under the HR umbrella that you would ordinarily associate with human resources. However, still, these are 17 additional duties that Ms. Robinson undertook for Haversham County. I thought his testimony was that all the additional duties were either things that had been in place for the HR director before Ms. Robinson came on board or they were duties that would normally be associated with an HR director position. Am I wrong about that? Yes, Your Honor. No, you're correct, Your Honor. And I might have misspoken. We are still, that is, we acknowledge that these are duties that are typically associated with HR. But if we're looking at Haversham County specifically, these are still 17 new additional duties Ms. Robinson undertook as HR director. And one duty in particular is the financial audits as the first ever HR director to undertake this. Her work extended far past the 8 to 5. She'd work on weekends, vacation days. She was warranted this reclassification. Okay, but why would that justify an assistant county manager position? I mean, it might justify a raise, right? Yes, Your Honor. And we can divide those two actions if this court finds that she was warranted a raise versus a new title. However, Ms. Robinson, throughout her pleadings, discusses how her role as HR director that she must approve any change of employment status or title change throughout the county does put her directly underneath Mr. Sutton for this unique role as HR director. So that was why she was warranted this title. However, if this court is not convinced that it should be the promotion plus the new title, it's still important to note that throughout his pleadings, Mr. Sutton cites two inconsistent statements as to why he denied this reclassification and promotion. But you know, most refusal to deal, refusal to promote cases, not all, but the great majority of them deal with a position that exists that a plaintiff is not promoted to for whatever reason. And then there are claims about whether or not that has improper overtones, racial, gender, religion, etc. But here, Ms. Robinson is requesting promotion to a position that doesn't exist and needs to be created. Does that mount any hurdles for her? No, Your Honor. First, the employment discrimination cases, they're looked at a case-by-case analysis. And here, if we're looking at her comparators, Cain and Knupp, these are still individuals that were given a new position that had never been created in Haversham County before. But the county had reasons for doing it. You may think that those reasons are wrong, but the county created those positions and she's asking for a new position to be created. Your Honor, still, she should not be punished that she is the only individual that had to ask for a reclassification and promotion. We're not indicating that Cain and Knupp had valid reasons for being given new positions. However, Ms. Robinson still, she undertook 17 additional duties throughout her tenureship as HR Director. When you say additional, but then in answering Judge Pryor's question, you said some of them were the ones that she had when she started. So, I'm sort of a little confused. Which ones did she take on after she started that didn't exist when she took the position? How many of those? Of looking at those duties, Ms. Robinson pleads that they are 17 additional duties that she undertook. The county has stated, and sorry if I misspoke to Judge Pryor's question, that Mr. Sutton states that previously some of these duties were associated with the HR Department. However, Ms. Robinson, her position is that still these are 17 additional duties that she undertook as HR Director. If you look under the umbrella of what HR activities are from an ordinary meeting, you could find that some of these actions would fall under that ordinary meeting. But subjectively, here at Haversham County, Ms. Robinson took on 17 additional duties, and one being the financial audit. Aside from the financial audit, which ones do you think don't fall under the traditional HR umbrella? Well, Your Honor, she also, she created budgets, presentations, and new policies for the county, and there was not a new policy. She was the budget director for the county? Or, sorry, Your Honor, I thought you meant for policies. For budgets, that would have been for HR Department. Right, but that, you expect a department head to work on budgets for his or her department. So what was outside of that umbrella for HR? She was the first to make a new policy since, I believe, 2017. There had not been a new policy implemented. So there are, once again, if we look at it from a very broad lens, yes, some of these duties are going to fall under the lay meaning of what HR would encompass, but still, these are new duties from her tenure as HR director that she undertook, and that was reasons for her reclassification, for her promotion. Other individuals similarly situated, but they were white individuals, were given promotions and raises based on their additional work during their time at the county. This court should reverse the district court's decision in its entirety because the district court treated these comparators as nearly identical, as well as they failed to analyze the alleged intentional discrimination under convincing mosaic, which my co-counsel will discuss. Thank you. All right, thank you very much. May it please the court, my name is Jason Carlton and I also represent Vanitha Robinson in this case. Now, whether we are talking about McDonnell Douglas or convincing mosaic, the issue is specifically with convincing mosaic the same, that the district court's judgment was not only deficient, but also erroneously applied insofar as it effectively required Ms. Robinson to prove discrimination at the summary judgment phase. So, first, after Johnson v. Miami-Dade County, a recent opinion by this court, it is apparently clear that McDonnell Douglas is in this circuit a sort of flight A of discrimination cases insofar as it provides a presumption of discrimination, but it is not the end-all be-all of discrimination claims, that a standard for Rule 56 is effectively necessary in terms of analysis, and where, as here, Ms. Robinson has pled and has presented sufficient evidence, a panoply of evidence, in fact, of a lien to an inference of discrimination, a dispute of material fact of discrimination in the county. What are those things? I mean, her personnel reviews were not outstanding. She started with some twos and some threes, went to two threes and fours, a smattering of fives, but she's not, if you look at the personnel reviews, she was not an employee who had excelled across the board over her tenure at the county. So, why doesn't that provide a sufficient non-discriminatory reason for the county not to promote her to a new position that would have had to be created? Your Honor, while Ms. Robinson started with poor performance reviews, by the time of the request, she was receiving positive performance reviews. Six weeks before she requested the raise in the reclassification, Sutton himself wrote in her performance review that she had demonstrated expertise in HR management, that she had a deep knowledge of the department, and she had proven the complaint, and after the EEOC filing, those reviews, once again, suspiciously fall back down to a two. She had received positive performance reviews. She's in a department that increasingly was taking on burdens. While a lot of these burdens might have preexisted, her taking on the job, she did take on additional duties specifically with W-2 processing, the financial auditing that different departments used to do, and she testified herself that she was working over 50 hours a week. It was not eight to five. She was there all the time. She had become effectively the point of contact for Sutton. So when she asked for the reclassification... Let me ask you, so even though her performance review scores do show kind of an upward trend, weren't there continuing complaints to Mr. Sutton or that he eventually received regarding her failure to do this or that? Your Honor, there were, as was subsequently pointed out, there were some complaints to Sutton, but of course the county did not bring this up immediately. The initial reason was just the general meritoriousness of her request. Later they brought up the budget. Later they brought up specific instances of conduct, but Sutton repeatedly stated that that did not motivate his decision to deny her raise and reclassification. Well, right, but he said his general impression, if I'm correctly stating the record, he said that his general impression of her performance was not so excellent that he thought she deserved this kind of promotion. So he didn't point to any specific incident, but overall he didn't think her performance was as excellent as it should be. And is there anything, I mean, what in the record refutes that? Your Honor, Sutton, and as in the R&R adopted by the District Court, the consistent thread through Sutton's testimony is that he just didn't think that she deserved it. So he's consistent there, but he's thoroughly inconsistent as to why that is the case. He has pointed to the budget, but then admits he never checked the budget and there was in fact plausibly money in the budget. He never considered a specific instance. I thought he didn't say there wasn't money in the budget. He said it was something that would have to be budgeted for. Yes, Your Honor, the position itself was not accounted for in the budget, but the budget for that year did have, he didn't check the budget. He didn't check any financial reports before making the decision. But on that note, the board itself in November is the entity in the county that is supposed to make these sorts of decisions, and not only did he flatly reject Ms. Robinson, but he also refused to bring it before the board at all. The proper channel here, if he wasn't going to approve it, which he could have approved the raise, that right there, as he did in the same month in other circumstances for other employees, other white employees in the county. The other avenue he could have taken was to bring it before the board in November, and he didn't. I think you're getting into maybe another question that I have, which is that even though in a convincing mosaic case, the plaintiff does not have to show comparators, it seems to me that the evidence you're marshaling in support of the convincing mosaic theory is based on the comparators, Kane and Canup. What circumstantial evidence aside from that do you have as evidence of discrimination? You might have touched on that at the end of your last answer. Your Honor, in the convincing mosaic, of course, when we're looking at differential treatment of similarly situated individuals, there's Kane and Canup, but there are 20 other, 24 specifically, other employees in the county who received raises and often reclassifications during this relevant period. Now, Kane and Canup are close Exec 1s. Barbara Overton was also reclassified and given a raise during that time period for additional duties. Mandy Green, excuse me, was also given a raise and a reclassification during the exact same month that she requested one. So there are other employees, and there are two dozen, in fact, that did receive raises were treated differently, either before the board or approved by Sutton himself. And in this department... None of those were minority employees? No, Your Honor. They're all Caucasian. And during this time... Did the employees make a similar request to that of Ms. Robinson and were denied? No, Your Honor. Ms. Robinson stated that she's the only African-American woman working for the county. So in this... From that, I remember reading that in the record, I presume that there are some African-American men working for the county? It is possible, Your Honor. It's not in the record. Nobody from that group requested a position change or a raise aside from Ms. Robinson? That is correct, Your Honor. Now, in this environment, she is the only African-American woman working in the department, the only Exec 1. She is approving personally as the point of contact to Sutton over 20 raises and reclassifications during this period. And when she requests one, she's not only denied, but she's also denied the chance to go before the board and present her request properly. So there are two dozen other potential comparators here for convincing Mosaic. There's the shifting standard, the abject lack of a standard, as far as Sutton's reasoning goes for denying her. And then finally, there is the suspicious changing in her performance reviews, going from a positive, demonstrating leadership and expertise to a situation where she's receiving a negative performance review as soon as she files an EEOC charge. She received one salary raise after she started with the county, right? Yes, Your Honor. How much before these events was that raise? Your Honor, the initial raise was in accord with the restructuring in the Vincent Institute study, and that was, I believe, two years before the incident. There had also been mandatory cost of living adjustments as well in the county. But if Your Honor does not have any more questions for these reasons, we respectfully ask this court to reverse and remand to the district court. Thank you. All right. Thank you very much. Mr. Robin. Good morning, Your Honors. May it please the court, Ken Robin for appellees Philip Sutton and Habersham County. Now, this, importantly, this is a case that's on a grant of summary judgment. Ms. Martin was talking about what was pled, and it's in the pleadings. We're on a summary judgment motion here. We're not looking at the complaint allegations. It's required to go beyond that at this summary judgment stage. And the district court got it right with their ruling. They correctly determined that there were no similarly, under the McDonnell-Douglas framework, there were no similarly situated comparators in all material respects to Ms. Robinson. They correctly determined that there was legitimate non-discriminatory reasoning for the decision to deny Ms. Robinson's promotion request and an absence of sufficient evidence demonstrating pretext. And there was also, kind of go along with that last determination of McDonnell-Douglas, there was also an exhaustive look at the evidence of record and an analysis, about 42 pages of factual analysis, looking carefully at the evidence that ultimately determined that there was not sufficient evidence for a reasonable jury to determine that there was an inference of intentional race discrimination. Can we start with McDonnell-Douglas? Sure. I understand your argument about why, under our precedent, Ms. Robinson was not similarly situated to the non-Exec 1 directors. Sure. But let's talk about the Exec 1 directors, specifically Kane and Knuff. So tell me why, one by one, those are not appropriate comparators under our decision in Lewis. Okay. Well, I'll start with Kane. He was the fire chief. And he was, first of all, I think it's very important to consider the context of the departments. Yes, Kane was the department director. Ms. Robinson was the department director. Fully acknowledge that. But Kane was the fire chief managing the county's fire department, overseeing, supervising, managing operations, fire suppression and rescue services, large department. Ms. Robinson had supervision over two, I think, about two to three employees during this span of time. And she was exclusively kind of dealing with human resources-related matters, including compensation, performance evaluation, employee benefit administration. And I think it's important to distinguish those because her focus here, as far as the denial of her promotion request, is intimately related to her job duties and expansion of her job duties and responsibilities that she's claiming justified that. So I think it's important to distinguish Kane's department and Ms. Robinson's department. It's also important to distinguish the fact that Kane did not make a request to get promoted and to be put into a dual role of fire chief slash assistant emergency services director. This was a circumstance that was completely the result, as Your Honor noted, a merger where the Habersham Medical Center was the previous entity that provided the emergency services EMS function that was not under the county's umbrella previously. 2018, a merger took place. The whole EMS function, emergency, Habersham Medical Center employees merged with the county, created an entirely new emergency services department in the county that included over 33 full-time EMS employees being put under the umbrella of the county. So that caused a new emergency services department director position to be created. And because there was this absorption of this many new EMS employees, Mr. Kane was also given this dual assistant emergency services director title because he was part and parcel of his job was now going to be managing, overseeing, supervising these over 33 full-time employees. Was there a new director? I'm sorry. Was there a new director of the new EMS or he was it? No, there was a separate emergency services director. So he was under, in the reorganization, he was underneath that person? Right. He would have been second in command in this newly created emergency services department. Okay. Let me, yeah, you mentioned that one of the reasons Kane was different is that he didn't ask for a promotion. What difference does that make if an employee thinks she deserves a promotion and she asks for it as opposed to it being recommended? I think that goes to the Lewis, what was the conduct at issue here? This isn't a case really where misconduct, we're comparing different types of misconduct. It's the conduct at issue is this specific request to be promoted and having a dual high-level upper management position added on to your existing position when that job never existed, was not contemplated, was not budgeted by the county commission. So I think that's an important part of the guideposts that Lewis speaks to in this case. I think returning to Judge Jordan's initial question, I'll go back to Mr. Knopf and how he is not a valid comparator compared to Ms. Robinson. Again, and I'll go back, this was another situation where Mr. Knopf did not request to be promoted into a position and was advocating for a new position to be created for him. Judge, as you recognize, this was the chairman of the board of commissioners who recognized his achievement and success, basically a standout department director in the county and wanted to create this position based on that recognition. But what was the new position created? Senior public works director. So he would have been over the public works director, which was his prior position. So there was a newly created senior public works director position. And that was in recognition of really three factors that the board of commissioners recognized as Mr. Knopf being worthy of such a created position. He was department head of a very large department, especially in comparison to Ms. Robinson's, where he included management supervision over three different divisions that make up public works, roads, landfill, slash solid waste, and the airport. And again, his work performance and history stood out in comparison to Ms. Robinson. He was, he brought in more grant money to fund county operations than any other county employee to the tune of over $26 million in grants He was also, part of this was also recognition in 2020, where there were two successive hurricanes that hit over the span of a two-week period. He was championed for his performance and quickly having his staff reopen more than 80 roads that had been closed in the county that were impacted by that hurricane events. That combination of his management of the large department, his action in responding to the hurricanes by quickly having staff reopen roads, and his, by far, most successful county employee as far as securing grants for funding necessary county services, that was all put into the stew of why he was granted the senior public works director position. How long had each of them been employed with the county before their promotions? Mr. Knupp was actually hired, he was actually hired three years prior to Ms. Robinson. And Mr. Kane was hired, actually got it right in here, he was actually first hired in 1998. He had been fire chief since 2007, so he was a long-standing employee with the county in comparison to Ms. Robinson, who started in 2016. Did either Mr. Kane or Mr. Knupp have a disciplinary history? There's no record that they did, Your Honor, and that's part of this factor, too. Now, I acknowledge that there were, Ms. Robinson's performance evaluations weren't you know, poor across the board at the time that she asked for this promotion. But as Your Honor also pointed out, there were, even in the evaluations that were, might have been higher than when she first started, there were comments and notations about counseling and issues for her improvement. She was, you know, certainly didn't distinguish herself as, you know, the top department director employees, and that was part of the thinking and the reasoning of Mr. Sutton is that he didn't think she warranted a promotion to previously non-existent assistant county manager title that would have had the perception of her being, having potential supervisory authority over some of the other department directors. He just didn't think she warranted that. And I think to answer your other question earlier, she got a three and a half percent merit increase literally two months before she asked for the promotion. That was her only salary raise from the time she was hired? No, no. She had plenty of salary raises since she was hired. That's in the record. It's Exhibit 11 to Mr. Sutton's declaration. She was, she received a compensation study increase about six months after she was hired. She filled a role of a safety coordinator as part of her job duties. She was received a $100 per month because of that role. Two percent merit increase in May of 2017. Another phase two of the compensation study increase in October of 2017 where her salary went from $61,655 to $66,792. May of 2018, three and a half percent merit increase. July of 2018, three percent COLA increase. May of 2019, three and a half percent merit increase. So all of that, that's a significant history of her being increased from the day she started. On the performance issues, what's your response to your opponent's argument that there's inconsistency with regard to Mr. Sutton's consideration of any performance reasons as basis for his denial? I don't think there's any inconsistency at all and I think the magistrate judge and the district judge recognize that as well. Mr. Sutton was asked in his deposition extremely compartmentalized questions like, did you consider any of her 2017 issues in your decision? Did you consider anything in 2018? All the questioning was compartmentalized and Mr. Sutton was consistent. He said, it wasn't in my mind at the time that I was pinpointing specific dates, specific incidents, what happened in 2017, what happened in 2018. I was in my mind the totality of my knowledge of her overall performance. She just didn't warrant in my mind a promotion to this position that did not exist and was not contemplated as being in existence during the entire tenure of Mr. Sutton's time as county manager. And I see my time is dwindling down here. So again, I think the lower court got it right here. It was in McDonnell Douglas. On the convincing mosaic, if we can jump there for just a little bit, what's your response to their pointing out that there are all of these requests that have been made over the years by white employees to be reclassified and they were actually reclassified, but Ms. Robinson's request was denied? I mean, I think that goes to them not being valid comparators. I mean, part of the convincing mosaic can be shown through systematically better treatment of assembly situated employees and evidence that the employer's justification is pretextual. I don't think we've got that evidence here. I don't think any of these 24 lower level non-executive employees who are not even department directors and whose immediate supervisors were not Mr. Sutton requesting them being reclassified. I just don't think that gets her over the hump as far as sufficient for a reasonable jury to infer intentional race discrimination under the convincing mosaic rule, which is, again, is basically the Rule 56 summary judgment standard. Part of the other thing is that these other employees, white employees who asked for salary raises and increases, got something that Ms. Robinson was also getting, maybe not at the exact same time and at the exact same rate, but she was getting salary increases that were partly merit-based. Right, correct. And if you look at the record, there's a bunch of change status forms for those 24 individuals where there's a variety of different reasons. I mean, it could be longevity. It could be someone had a seat, got passed a certification or licensing to get a CDL license, and that was a basis. Merit was one of the basis. There's COLA increases. There's all different sorts of reasoning. So it's just not as hammered circumstantial evidence where an obvious inference of intentional race discrimination could flow from that. And again, I urge the Court to affirm the lower court's ruling. Thank you. All right. Thank you very much. Two points on rebuttal, Your Honor. First, to start with my friends on the other side of there's all different types of reasoning. That's exactly our point. As this Court has stated in Rue, Quote and Combs, inconsistent and contradictory statements as to why an individual was denied a promotion, they can be evidence of pretext. Mr. Sutton and the county cite to at certain times, it was general performance. Then Mr. Sutton says, I did not consider any specific instance. Then the county supplements a... But those two are not necessarily inconsistent. In other words, you may not focus on a specific prior occurrence, but the overall arc of an employee's history may be relevant. I don't know why those two are necessarily inconsistent. Your Honor, they're inconsistent in that Mr. Sutton in his depositions states that he does not consider any specific instances. However, the county in supplementing to the EEOC charge, Ms. Robinson filed in July of 2019, supplements a 14-page letter with 22 specific instances, 11 of which were after Ms. Robinson had filed this EEOC charge. These are inconsistent. We have, it's a general overview of Ms. Robinson's performance, and now it's 22 specific instances. But 22 of those instances, 11 of them were after Ms. Robinson filed an EEOC charge. And still we have more inconsistent and contradictory statements with the budget. Mr. Sutton states that it was not in the budget because it was a new position. Therefore, it cannot be accounted for. However, he never checked any budget. The budget actually accounted for the 10% promotion she was seeking. Furthermore, Mr. Sutton cites that because this is a novel title, she cannot be afforded this role. However, once again, Kane and Knupp were offered new positions with novel titles, and this is once again an inconsistent statement. Are those the only two that were reclassified, Kane and Knupp, in this record? No, Your Honor. There are 24 other employees that were white individuals that were given their warranted reclassifications throughout their tenure. So it's not just Kane and Knupp. Now, these are two individuals that we can look at, but you can also look at Barbara Overton, who was given a new position, as well as Heather Renthrow, Mandy Green, and 20 other individuals. We have met what is required of the McDonnell Douglas standard, as well as the convincing mosaic. The convincing mosaic standard does not require us to show a similarly situated comparator, but rather, looking at the circumstantial evidence, Ms. Robinson has alleged an intentional discrimination case that should be given to a reasonable jury to decide these genuine issues of material fact. We ask that you reverse the district court decision in its entirety. Thank you. All right. Thank you all very much. We appreciate it. We're in recess for today.